142 Pa. Commonwealth Ct. 493 (1991)
597 A.2d 750
In the Matter of J.S.
Appeal of COMMONWEALTH of Pennsylvania, DEPARTMENT of PUBLIC WELFARE.
Commonwealth Court of Pennsylvania.
Argued March 5, 1991.
Decided September 25, 1991.
*495 Howard Ulan, Asst. Counsel, for appellant.
Bradley S. Bridge, Asst. Defender, for appellees.
Before McGINLEY and BYER, JJ., and BARRY, Senior Judge.
BARRY, Senior Judge.
The Department of Public Welfare (DPW) appeals from an order of the Court of Common Pleas of Philadelphia County that denied DPW's motion to the court to review the recommendation of a mental health review officer under the Mental Health Procedures Act (MHPA).[1] DPW contends that the court of common pleas erred in holding that DPW lacked standing to seek such review. It also seeks to obtain a ruling that the procedure under which J.S., the person involved in the case, agreed to an involuntary commitment is invalid under the MHPA.
In 1985, the Philadelphia State Hospital filed a petition pursuant to Section 304(c) of the MHPA, 50 P.S. § 7304(c), which sought court-ordered (i.e., involuntary) inpatient treatment for J.S. for a period up to ninety days. Section 304(a)(1) permits such treatment upon a "determination" that a person is "severely mentally disabled" as defined in Section 301(a), 50 P.S. § 7301(a), to mean that, as a result of mental illness, he poses a clear and present danger of harm to others or to himself. Section 301(b) provides that clear and present danger to others may be shown by "establishing" that within the past thirty days the person has inflicted or attempted to inflict serious bodily harm upon another and that there is a reasonable probability that such conduct will be repeated.
Rather than establishing the facts alleged in the petition filed against J.S. by the hospital at a hearing, the parties followed a procedure under which J.S. agreed to the entry of an order of commitment with the addition of the phrase *496 "no stipulation". All parties understood that addition to mean that J.S. did not admit to the behavioral facts alleged in the petition, that the order should not be deemed an adjudication of those facts, and that J.S. reserved the right at any subsequent recommitment hearing to demand proof of those facts and, if they were not proved, to be discharged from the hospital. At subsequent recommitment hearings pursuant to Section 305 of the MHPA, 50 P.S. § 7305, J.S. agreed to further treatment and reserved his right to demand proof.
This went on for approximately four years until, at a hearing on January 10, 1990, J.S. declined to agree and demanded proof of the original allegations. Although DPW was granted a continuance and made contact with the witness involved, she did not appear at the hearing. The mental health review officer therefore dismissed the petition for recommitment, but he recommended a stay of the proceedings, which the court of common pleas granted, pending the court's review. DPW filed a petition for review of the recommendation of the mental health review officer. The Defender Association of Philadelphia, which has represented J.S. throughout these proceedings, filed preliminary objections to DPW's petition. They asserted that the MHPA, by providing only that "the person made subject to treatment" by a certification of a mental health review officer might seek review by the court, Section 109, 50 P.S. § 7109, did not authorize DPW or any other petitioner to seek such review. At the first hearing before the court on DPW's petition, the Defender Association also raised a claim that the case was moot, because J.S. had informed his counsel that he agreed to remain in the hospital, hence he was not seeking discharge or expungement of his records. The court orally overruled all preliminary objections; however, the court ultimately issued an opinion that agreed with the Defender Association's argument that the MHPA did not permit DPW to seek review. The court's order denied DPW's petition and remanded the matter to the mental health review officer in order to continue J.S.'s *497 treatment pursuant to the MHPA. DPW timely appealed to this Court.
The Defender Association repeats its contention that the case is moot.[2] J.S.'s counsel first raised this issue by stating, "[I]t also appears that at least as of last Wednesday afternoon, J.S. had indicated to the mental health social worker from our office that he was willing to stay in the hospital." (Notes of Testimony of 3/28/90, p. 2.) Obviously, if J.S. were to change his mind again, or if he has changed his mind since the date of the last hearing on this matter, then the case would not be moot. Under these circumstances, where the mootness depends on no permanent change in the facts or the law but only on the possibly changeable desires of a committed person regarding discharge, we believe that the case should not be dismissed as moot but should be decided.
DPW first argues that the common pleas court erred by concluding that the MHPA did not permit it or any other petitioner to seek review by the court of the action of the mental health review officer. Section 109 of the MHPA, which creates the position of mental health review officer, provides that the hearings called for under Sections 304 and 305, among others, may be conducted by such an officer or by a judge. If the hearing is conducted by a mental health review officer, "the person made subject to treatment shall have the right to petition the court of common pleas for review of the certification." A hearing shall be held by the court within seventy-two hours of the filing of such petition, *498 and the hearing shall include a review of the certification and such evidence as the court may receive or require.
First, we observe that review by the court of the action of the mental health review officer is not in the nature of appellate review. In In re Chambers, 282 Pa.Superior Ct. 327, 422 A.2d 1140 (1980), a person made subject to treatment under a Section 304 petition appealed the "order" of the mental health review officer to the Superior Court. The Superior Court noted that a Section 304 commitment required an "order" of the court of common pleas. The court concluded that the mental health review officer is the equivalent of a master, but he is not a judge or the equivalent of a judge of the court of common pleas. Therefore, the mental health review officer could not issue a final order from which appeal would lie to the Superior Court.
Petitions for involuntary treatment under Section 304 and 305 of the MHPA are filed with the court, and a court order must be entered to effect the involuntary treatment. Where the initial hearing on such a petition is conducted by a judge, there is no question that the petitioner has standing to present evidence and argument to the court. Where the hearing is conducted by a mental health review officer, that hearing is simply an optional step, which results in a recommendation to the court rather than an order. The review by the court is not an "appeal", and the party who filed the petition need not establish separate standing to seek such review. Although the statute prescribes the procedure for a person made subject to treatment to seek review of the certification, it is silent on the procedural question of review of actions other than certification.
Further, the express policy of the MHPA supports a conclusion that petitioners such as DPW may seek review by the court. Section 102 of the MHPA, 50 P.S. § 7102, provides in part:
The provisions of this act shall be interpreted in conformity with the principles of due process to make voluntary and involuntary treatment available where the need is *499 great and its absence could result in serious harm to the mentally ill person or to others.
This Court has held that common sense must be applied in construing the provisions of the MHPA. Uram v. County of Allegheny, 130 Pa.Commonwealth Ct. 148, 567 A.2d 753 (1989), (common sense required interpretation of provision speaking only of a "written application" for a warrant for emergency examination to permit initial receipt of information by telephone, to thus provide a decisionmaker with flexibility to respond to life-threatening situations). The purpose of the MHPA to provide treatment where the need is great could be thwarted if the act were interpreted to prevent a petitioner such as DPW from seeking review by the court to point out possible errors by the mental health review officer. Due process concerns may be accommodated by using common sense to conclude that the same time constraints applicable to review of a certification also apply to review sought by a petitioner such as DPW.
As noted above, Section 304(a)(1) refers to a "determination of clear and present danger" under section 301(b). Section 304(f) provides for the entry of an order directing treatment "[u]pon a finding by clear and convincing evidence that the person is severely mentally disabled and in need of treatment and subject to subsection (a)...." The purpose of the procedure under which J.S. was committed was to allow for the entry of an order of commitment without the making of findings relating to the behavioral facts alleged in the original petition. Therefore, the commitment of J.S. was contrary to the express mandate of the statute. See Commonwealth v. Hubert, 494 Pa. 148, 430 A.2d 1160 (1981), (because of the policy of the MHPA to authorize involuntary treatment only for those who are mentally ill, not for those who may be mentally ill, and because of the numerous restrictions imposed in a mental hospital, strict compliance with the statutory requirements is necessary). Contrary to the Defender Association's contention, DPW cannot be estopped from disputing the lawfulness *500 of the procedure employed in this case because DPW agreed to participate in it in the past.
DPW urges us to cure the problem by striking the "no stipulation" language and deeming the original Section 304 commitment order to have been a proper order that established the facts alleged. To do so would be to engage in the writing of fiction contrary to the express agreement of all of the parties involved and to give that fiction legal effect. Because DPW or the original petitioner never proved the facts that the statute requires to be proved for an order of commitment to be entered, we shall direct that J.S. be discharged. Should J.S. still be willing to remain in the hospital, then his status would be converted to that of a voluntary patient under Article II of the MHPA, provided that he gives his consent to voluntary treatment in writing as provided in Section 203, 50 P.S. § 7203.
Our holding that the "no stipulation" procedure is invalid under the terms of the MHPA calls into question the status of other persons currently subject to involuntary commitment under orders adopted pursuant to that procedure. In such cases, all parties, including the person subject to commitment, agreed to the "no stipulation" procedure. In our view, such agreement constitutes a waiver of the right to challenge any existing commitment on the basis of our holding today. If a committing authority should seek an additional period of commitment at the expiration of a current period, then, under our holding today, a court would lack the authority to enter such an order on the basis of a further "no stipulation" agreement. Therefore, the committing authority would be required to establish the behavioral facts alleged originally at that time, either by way of stipulation or through adducing evidence at a hearing. If the petitioner established the facts, and if the facts met the "clear and present danger" test of Section 301(b), then the Section 305 proceeding could continue in full compliance with the mandates of the MHPA. Otherwise, the court should order that the person be discharged. A person ordered discharged under those circumstances would retain *501 the right to convert his status to that of voluntary commitment if he chose to comply with provisions relating to voluntary commitment.

ORDER
NOW, September 25, 1991, the order of the Court of Common Pleas of Philadelphia County, at No. 2755 December Term, 1985, dated August 30, 1990, denying the petition for review of recommendation of mental health review officer filed by the Department of Public Welfare, is reversed. This matter is remanded for the entry of an order discharging J.S. from the facility where he is currently receiving treatment.
Jurisdiction relinquished.
BYER, Judge, concurring.
I agree for the most part with the majority opinion. However, I write separately because I disagree in two minor respects with the majority opinion's discussion of the mootness issue.
First, although I agree with the majority that this case should not be dismissed for mootness, I have a slightly different basis for that conclusion. There is a recognized exception to the mootness principle which allows a court to decide a case which might in a technical sense be moot but which presents an important question capable of repetition but evading review. Jersey Shore Area School District v. Jersey Shore Education Association, 519 Pa. 398, 548 A.2d 1202 (1988); Minersville Area School District v. Pennsylvania Labor Relations Board, 130 Pa.Commonwealth Ct. 475, 568 A.2d 979 (1989); Cytemp Specialty Steel Division, Cyclops Corp. v. Public Utility Commission, 128 Pa.Commonwealth Ct. 349, 563 A.2d 593 (1989); In re General Election, November 8, 1988, 126 Pa.Commonwealth Ct. 450, 560 A.2d 260 (1989). I believe this is such a case.[1]
*502 I also do not agree with the majority's suggestion that a court would not dismiss a case as moot if a party fails to preserve an objection based upon mootness. See majority opinion at 497, n. 2. Unless a case falls within an exception to the mootness doctrine, a court is obliged not to decide a case which is moot. See In re Gross, 476 Pa. 203, 382 A.2d 116 (1978); Cytemp Specialty Steel Division; Pennsylvania Liquor Control Board v. Dentici, 117 Pa.Commonwealth Ct. 70, 542 A.2d 229 (1988); Benoff v. Zoning Board of Adjustment, 107 Pa.Commonwealth Ct. 578, 528 A.2d 705 (1987). This sound policy against rendering advisory opinions requires that a court act sua sponte to dismiss a moot case, and no procedural default by a party possibly could justify a court deciding a moot case in the absence of an exception to the mootness doctrine. Therefore, DPW's argument that the Defender Association did not properly raise the mootness question in the trial court is irrelevant.
NOTES
[1] Act of July 9, 1976, P.L. 817, as amended, 50 P.S. §§ 7101 through 7503.
[2] At oral argument, DPW asserted that the Defender Association had not properly raised its mootness claim in the court of common pleas. It cited a case where this Court said that a party should have raised such a claim by way of a motion to dismiss for mootness pursuant to Pa.R.A.P. 1972. Since that time, however, this Court has held definitively that the Rules of Appellate Procedure apply only to procedure in the Supreme Court, the Superior Court and the Commonwealth Court. McNeilis v. Department of Transportation, 119 Pa.Commonwealth Ct. 272, 546 A.2d 1339 (1988). In the absence of any other objection by DPW, we conclude that the manner of raising the mootness claim was adequate.
[1] The majority concludes that this case should not be dismissed as moot because "the mootness depends on no permanent change in the facts or the law but only on the possible changeable desires of a committed person regarding discharge...." Majority opinion at 497. I cannot subscribe to this expression of what apparently is a new exception to the mootness doctrine recognized by the majority. A case always may be rendered moot by the "changeable desires" of a party who decides to give up the dispute. The fact that the party here is the subject of a mental health commitment does not of itself require a different analysis regarding mootness.