559 Pa. 118 (1999)
739 A.2d 478
In re T.J.
Appeal of City of Philadelphia, the County Office of Mental Health/Mental Retardation.
Supreme Court of Pennsylvania.
Argued October 19, 1998.
Decided September 29, 1999.
*120 Stephanie L. Franklin-Suber, Charlotte A. Nichols, Philadelphia, Richard Feder, Lynda H. Moore, Philadelphia, William S. Braverman, Mark R. Zecca, Philadelphia, for City of Phila., Office of M.H. & M.R.
Paul A. Tufano, Harrisburg, amicus curiae  Dept. of Public Welfare.
Amy M. Dolan, Pittsburgh, amicus curiae  Allegheny Law Dept.
*121 John W. Packel, Ellen T. Greenlee, L. Roy Zipris, Philadelphia, for T.J.
Gary Neil Asteak, Easton, amicus curiae  Public Defender of Pa.
Robert W. Meek, amicus curiae  Mental Health Assoc., et al.
David R. Crowley, Bellefonte, amicus curiae  Centre County Public Defender.
Mitchell A. Kaufman, Pittsburgh, amicus curiae  Allegheny County Public Defender.
Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

OPINION
CAPPY, Justice.
The issue with which we are presented in this matter is whether the Philadelphia County Office of Mental Health/Mental Retardation ("MH/MR") had standing to contest a mental health hearing officer's decision to discharge a mental patient from involuntary commitment. We hold that MH/MR does have standing, and therefore reverse the Superior Court's order quashing MH/MR's appeal.
Sometime in the fall of 1996, T.J. began exhibiting bizarre behavior. T.J. would enter convenience stores and take food out of the stores for which she had not paid, claiming that Christ had told her to feed the people of the world. On other occasions she claimed she was Christ. Her sleep patterns became erratic. Also, she claimed that unknown persons were poisoning her food; her resultant refusal to eat had caused her to lose approximately thirty pounds in a one month period.
On October 18, 1996, T.J.'s husband and sister completed an application for "INVOLUNTARY EXAMINATION AND TREATMENT" of T.J. In the application, they expressed concern for T.J.'s well-being as well as for the safety of her three children. On that same day, T.J. was examined by a psychiatrist at Misericordia Hospital ("Hospital") who concluded *122 that T.J. was severely mentally disabled and in need of treatment. She was subsequently involuntarily committed to Misericordia Hospital for a period not to exceed 120 hours, pursuant to 50 P.S. § 7302.
On October 21, 1996, a petition to extend treatment pursuant to 50 P.S. § 7303 ("303 petition") was filed, requesting that T.J.'s involuntary commitment be extended for a period not to exceed twenty days. T.J. moved to have the 303 petition discharged, claiming that there was insufficient evidence to prove that in her present condition she posed a clear and present danger to herself and others.
A hearing was held before a mental health review officer ("review officer") on October 22, 1996. At that time, the attorney for the MH/MR attempted to introduce additional evidence of T.J.'s mental incapacity. This alleged conduct, however, had not been noted in the original 303 petition. The review officer did not allow this additional information into evidence. The review officer ultimately determined that there was insufficient evidence to establish that T.J. was in need of involuntary treatment and thus ordered her discharged.
On November 1, 1996, the MH/MR filed with the trial court a petition to review the determination of the review officer.[1] T.J. moved to quash MH/MR's petition on the *123 ground that MH/MR had no right to seek review of a discharge determination. The trial court quashed this petition on January 7, 1997. The court later rescinded this order, however, apparently on the basis that T.J.'s motion to quash had not been served on MH/MR. On February 5, 1997, the trial court denied MH/MR's petition on the merits.
MH/MR filed an appeal with the Superior Court. T.J. filed a motion to quash alleging, inter alia, that MH/MR had no right of review from a decision by a review officer discharging a patient from involuntary commitment. The Superior Court agreed with T.J. on this point, finding that MH/MR lacked standing. The Superior Court rested its opinion on two bases. First, the Superior Court found that the Mental Health Procedures Act ("MHPA"), 50 P.S. § 7101 et seq. did not specifically provide that the MH/MR had the right to seek review of a discharge petition with the trial court. Thus, the Superior Court reasoned, the legislature had not granted standing to MH/MR.
The Superior Court went on to state that a party may have standing in a dispute not only via a specific legislative grant but also simply by establishing that the party is "aggrieved" by the official order or action. The court stated that for a party to be "aggrieved," it must have: "1) a substantial interest in the subject matter of the litigation; 2) the party's interest must be direct; and, 3) the interest must be immediate and not a remote consequence of the action." Beers v. Commonwealth, Unemployment Compensation Board of Review, 534 Pa. 605, 633 A.2d 1158 (1993). The Superior Court applied this test and determined that MH/MR was not "aggrieved" and therefore lacked standing to pursue this matter. In arriving at this conclusion, the Superior Court placed great emphasis on its understanding that MH/MR did not have a "close and personal connection" to T.J.; that T.J.'s, and not MH/MR's, liberty interests were involved; and finally, that only T.J. and not MH/MR had any interest in this proceeding. Super.Ct. slip op. at 8-11. Although the Superior Court *124 briefly mentioned at the outset of its opinion that MH/MR had been created by the legislature to treat mental patients and protect the mental patients from harming themselves and others, it did not take the legislatively mandated purpose of MH/MR into account when it conducted its standing analysis.
MH/MR filed a petition for allowance of appeal from the order of the Superior Court; we subsequently granted allocatur.[2]
The sole issue before this court is whether MH/MR has standing to contest the review officer's decision refusing to extend treatment of T.J. and discharging her.[3] As this is a question of law, our scope of review is plenary. See Phillips v. A-Best Products Co., 542 Pa. 124, 665 A.2d 1167, 1170 (1995). As to determining the appropriate standard of review over this matter, we have failed to uncover any case law from this court which is on point. We find, however, that the most sensible approach would be to apply the typical appellate standard of review which requires that the reviewing court examine the lower tribunal's ruling for an abuse of discretion or error of law. See Albright v. Abington Memorial Hospital, 548 Pa. 268, 696 A.2d 1159 (1997); Park Home v. Williamsport, 545 Pa. 94, 680 A.2d 835 (1996).
Standing is a requirement that parties have sufficient interest in a matter to ensure that there is a legitimate controversy before the court. In determining whether a party has standing, a court is concerned only with the question of who is entitled to make a legal challenge and not the merits of that challenge. See Sprague v. Casey, 520 Pa. 38, 550 A.2d 184 (1988). As a general matter, the core concept of the *125 doctrine of standing is that a person who is not adversely affected in any way by the matter he seeks to challenge is not "aggrieved" and has no right to obtain a judicial resolution of his challenge. Independent State Store Union v. Pennsylvania Liquor Control Board, 495 Pa. 145, 432 A.2d 1375 (1981).
Although the Superior Court correctly enunciated the general rule of standing, it failed to recognize that we refined the rule for application to the particular situation where a governmental agency is alleging that it has standing in a matter. Commonwealth, Pennsylvania Game Comm'n v. Commonwealth, Dept. of Environmental Resources, 521 Pa. 121, 555 A.2d 812 (1989). In Pennsylvania Game Commission, we discussed how an administrative agency could be given standing by the legislature other than through an explicit grant. We stated that
[a]lthough our law of standing is generally articulated in terms of whether a would-be litigant has a "substantial interest" in the controverted matter, and whether he has been "aggrieved," . . . we must remain mindful that the purpose of the "standing" requirement is to insure that a legal challenge is by a proper party. The terms "substantial interest" [and] "aggrieved" ... are the general, usual guides in that regard, but they are not the only ones. For example, when the legislature statutorily invests an agency with certain functions, duties and responsibilities, the agency has a legislatively conferred interest in such matters. From this it must follow that, unless the legislature has provided otherwise, such an agency has an implicit power to be a litigant in matters touching upon its concerns. In such circumstances the legislature has implicitly ordained that such an agency is a proper party litigant, i.e. that it has "standing".
Id. at 815 (citations omitted; emphasis supplied). See also Franklin Township v. Commonwealth, Dept. of Environmental Resources, 500 Pa. 1, 452 A.2d 718 (1982) (township had standing to contest granting of permit for solid waste disposal as the granting of the permit necessarily implicates the township's *126 responsibility of protecting the quality of life of its citizens.)
We find that the rule enunciated in Pennsylvania Game Commission controls in this matter. Furthermore, application of that rule reveals that the legislature implicitly ordained that MH/MR has standing. The legislature created county mental health and mental retardation programs with the express purpose that they "diagnosis, care, treat[ ], rehabilitat[e] and det[ain] the mentally disabled...." 50 P.S. § 4301(a). A person is mentally disabled "when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself." 50 P.S. § 7301.
Clearly, ensuring that a mental patient who has been involuntarily committed is not erroneously discharged is a matter "touching upon [MH/MR's] concerns" as the MH/MR's goals of providing proper medical treatment to the patient as well as preventing that patient from harming others are implicated. Thus, in matters such as the one sub judice, MH/MR would have standing to file a petition for review or an appeal.
T.J., however, argues that the Superior Court properly quashed the appeal. One of her primary arguments in support of this position is that "government appeals are inherently moot because virtually every involuntary commitment resulting from a successful government appeal would be based upon stale evidence. . . ." Appellee's brief at 1. T.J.'s argument is alluding to the fact that the legislature has dictated that the evidence used to support the finding that a person's mental illness has rendered her a "clear and present danger," and is thus "mentally disabled," must refer to events that had occurred within the past thirty days. 50 P.S. § 7301.[4] T.J. asserts that this thirty day requirement was the legislature's *127 way of "balanc[ing] a person's liberty [interest] and society's right to provide timely involuntary treatment...." Appellee's brief at 16.
We agree with T.J. that where a governmental petition for review or appeal is not determined prior to the lapsing of thirty days from the time of the alleged incidents, then the governmental petition for review or appeal is mooted; the government could not proceed on a petition where the allegations had become stale. Also, it could very well be, as T.J. implies, that in this day of overcrowded court dockets, the usual scenario is that a court cannot act on a governmental petition for review or appeal prior to the running of the thirty days. Yet, the possibility that a governmental petition for review or appeal could be mooted out is simply unrelated to the issue of the government's standing. These two issues are separate concerns, and the determination of one question in no fashion controls the outcome of the other. To be sure, there may be matters where the government's application is not timely acted upon, either because the judicial review process is protracted[5] or simply because the information on which the original petition was based becomes stale. And in those matters, the action will be dismissed  but not because the government lacks standing, but rather because the information has become stale and petition for commitment must necessarily fail.[6]
For the foregoing reasons, we find that the Superior Court erred as a matter of law when it determined that MH/MR *128 lacked standing to contest this matter. Therefore the order of the Superior Court is reversed.[7]
Justice SAYLOR did not participate in the consideration or decision of this matter.
Justice ZAPPALA files a dissenting opinion joined by Chief Justice FLAHERTY.
ZAPPALA, Justice, dissenting.
I respectfully dissent. In my view, the General Assembly acted deliberately in explicitly providing the person made subject to treatment with a right to petition for review when a mental health review officer certifies that a further period of commitment is warranted, without providing a similar right to the county agency or anyone else to petition for review of a denial of such certification, which results in the person's release.
The involuntary commitment process of the Mental Health Procedures Act is designed to permit quick decisions about whether individuals pose a danger to themselves or others, while ensuring that they are deprived of their liberty for the shortest period necessary. Allowing court review where the officer's decision results in a continued deprivation of liberty, and requiring that the review be expeditious, is consistent with these purposes. See 50 P.S. § 7303(g). Allowing the agency to appeal a decision directing that the person be discharged, however, runs directly counter to these purposes.
I am fully aware that in this case T.J. was in fact discharged in accordance with the review officer's direction. Moreover, the majority studiously avoids deciding the significant question of whether an agency could continue to detain an individual for involuntary treatment while its appeal of a discharge order was pending. Nevertheless, I believe consideration of the practical consequences of granting agency standing is *129 necessary, and reveals the inadequacy of the majority's analysis.
If the individual is discharged while the agency's appeal goes forward, the "substantial interest" the majority attributes to the agency as the predicate for standing, i.e., "ensuring that a mental health patient who has been involuntarily committed is not erroneously discharged," opinion at 482, is illusory. It therefore appears implicit in the majority's rationale that an agency must be able to continue involuntarily detention while the appeal of the discharge order is pending. Since even under the most expeditious of circumstances such an appeal could not be concluded so as to allow for the individual's timely release in the event the discharge is affirmed, the agency can accomplish its end, continued detention, by indirection, and the individual can win only a hollow victory by prevailing in the appeal. This possibility seems to me to be entirely at odds with the policy that the Act be "interpreted in conformity with the principles of due process" and that "the least restrictions consistent with adequate treatment be employed." 50 P.S. § 7102.
Even if standing were based on another "substantial interest" that is not inconsistent with the individual's being released while the appeal is pending, this would in effect give the agency a blanket exemption from the mootness doctrine. under the "capable of repetition yet apt to evade review" rubric. As in this case, by the time a final order was entered it would have no application to the parties before the court. Every decision arising out of an agency appeal of a discharge order would be an advisory opinion.[1] I am not persuaded that such a course is either necessary or advisable.
*130 In addition to my dissent from the decision to allow the agency to appeal, I must register my concern with the majority's discussion of the nature of the review allowed. The majority indicates that "since the mental health review officer's determination is not a final order, then the trial court's review of it would be in the nature of de novo." Opinion at 480 n. 1. Reliance on In re J.S., 142 Pa.Cmwlth. 493, 597 A.2d 750 (1991), is misplaced, however, since that case dealt with proceedings under sections 304 and 305 of the Act, not section 303, which is involved here. Section 304 provides for court ordered involuntary treatment for periods of up to ninety days either as an extension of a commitment, see 50 P.S. § 7304(b), or as an initial commitment, see 50 P.S. § 7304(c).[2] Section 7304(e) provides that hearings on such petitions may be conducted by a judge or a mental health review officer, but since the statute speaks of a court order, the review officer's conclusions in this context can only be advisory to the court, hence interlocutory.
Section 303, however, speaks not of a court order but of a "certification" that the individual is in need of continued involuntary treatment that is to be made after an informal hearing or conference. Although the statute provides that such informal hearing or conference may be conducted by either a judge or a mental health review officer, 50 P.S. § 7303(b), in this context the review officer acts not as a *131 "master" making recommendations to the court but as an official authorized to make the certification, and the decision is "final" not interlocutory.[3]
In light of all these considerations, I believe the legislature acted purposefully in specifically providing an individual certified as needing continued involuntary treatment with a right to seek review, while not extending a similar to the agency a similar right to seek review of a discharge order. Thus I would affirm the order of the Superior Court.
Chief Justice FLAHERTY joins.
NOTES
[1] The Commonwealth Court has stated that review by a trial court of a mental health review officer's determination is not in the nature of an appeal since a mental health review officer is not capable of entering a final order. See In re: J.S., 142 Pa.Cmwlth. 493, 597 A.2d 750, 752 (1991). While J.S. concerned 50 P.S. §§ 7304 and 7305  and the matter sub judice involves § 7303  we nonetheless find J.S. to be instructive as all three of these statutes are governed by 50 P.S. § 7109. Section 7109 is the provision which states that hearings conducted pursuant to §§ 7303, 7304, and 7305 may be conducted by a judge of the court of common pleas or by a mental health review officer. Where, however, the hearing is conducted by a mental health review officer, § 7109 instructs that such a decision is reviewable by the court of common pleas. The court in J.S. utilized this self-same language from § 7109  which is applicable to the hearing conducted in J.S. as well as the hearing conducted in the matter sub judice  as the basis for its determination regarding the effect of a mental health review officer's order. In re: J.S., 597 A.2d at 752. We therefore find that reliance on J.S. to be apt. We further note that since the mental health review officer's determination is not a final order, then the trial court's review of it would be in the nature of de novo.
[2] As T.J. has already been discharged from Misericordia Hospital, this matter is technically moot. It is beyond peradventure that any decision in this case will have no effect on T.J. personally. Yet, we will still review this matter as it raises an issue of important public interest, and is an issue which is capable of repetition and yet apt to evade review. In re: Fiori, 543 Pa. 592, 673 A.2d 905, 909 n. 4 (1996).
[3] T.J. also raises other arguments in support of her position that MH/MR should fail. T.J., however, did not cross-petition for allowance of appeal and therefore these issues have been waived.
[4] The legislature provided an exception to this thirty day requirement in certain instances where the mental health patient has been charged with a crime. 50 P.S. § 7301(b). That exception has no application to the matter at hand.
[5] For example, the trial court's order in the instant matter was entered more than three months after T.J. had committed the complained of conduct. Clearly, MH/MR's petition for review and its subsequent appeal were thus technically mooted.
[6] We did not grant review on the issue of whether the MH/MR may, in effect, be granted a supersedeas and detain a patient involuntarily pending appeal of an order discharging that patient. Contrary to the position taken by the dissenting opinion, which posits that we are somehow addressing the issue of whether a patient may be detained pending appeal of an order of discharge, we stress the lower courts and the practicing bar that we express no opinion on this issue as it is not before this court. An attempt to characterize this opinion as addressing such an issue is, in our view, a mischaracterization.
[7] As noted in footnote 2, supra, this appeal is technically moot. Thus, although we have reversed the order of the Superior Court in the instant matter, our determination in this case shall not impact on T.J. personally.
[1] See, e.g., In re J.S., 526 Pa. 418, 586 A.2d 909 (1991), wherein this Court addressed the merits of an issue regarding the procedures applicable where a patient's commitment was changed from voluntary to involuntary. The review officer ordered the patient's release, which was done, and the agency appealed. The common pleas court accepted the agency's argument that the review officer had erred, but in its remand order stated, "It is not the intention of this Court by its order to direct the commitment of J.S. if she is not currently an in hospital [sic] patient and has no need to be committed." Id. at 912 n. 4. Similarly, our Court, in reversing the Superior Court and agreeing with the common pleas court on the procedural question, stated, "Given the passage of time since the proceedings reviewed in this decision, we shall not remand this matter to the trial court for further proceedings." Id. at 914. Significantly, the agency's standing to appeal the discharge order in the first instance was not challenged.
[2] It is significant that in cases where section 304 proceedings are initiated for someone not already in involuntary treatment, the Act specifies that "Involuntary treatment shall not be authorized during the pendency of a petition except in accordance with section 302 or section 303." 50 P.S. § 7304(c)(6). To my mind this demonstrates the legislature's intent that individuals not be detained while proceedings to place them in involuntary treatment for extended periods are conducted. It would be anomalous if a person subjected to involuntary treatment under section 302 and then section 303 were allowed to be detained while an order discharging him was appealed, and a person who was the subject of a section 304 proceeding could not be detained while that proceeding was conducted.
[3] Beyond this problematic reliance on J.S., the majority fails to explain whether the de novo review it accords to agency appeals from discharge orders is the same as or different from the review specified by the Act where a person made subject to treatment petitions for review of a certification. See 50 P.S. § 7303(g).