J-A01036-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| J.A. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MONTGOMERY COUNTY, HORSHAM | : | No. 1362 EDA 2022 |
| CLINIC, PENNSYLVANIA STATE | : | |
| POLICE, BRYN MAWR HOSPITAL, | : | |
| MONTGOMERY COUNTY EMERGENCY | : | |
| SERVICE | : | |

Appeal from the Order Entered May 12, 2022
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2021-24235

BEFORE: LAZARUS, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY LAZARUS, J.: **FILED APRIL 11, 2023**

J.A. appeals from the order, entered in the Court of Common Pleas of Montgomery County, denying his petition for review, and affirming the certification for extended involuntary commitment under subsection 7303 (section 303) of the Mental Health Procedures Act (MHPA).[1] Upon careful review, we affirm.[2]

---

[1] 50 P.S. §§ 7101-7503.

[2] The court's order provides:

> AND NOW, this 12th day of May, 2022, upon consideration of [J.A.]'s petition for review of 302 and/or 303 certifications, and responses thereto, it is hereby ordered as follows:

*(Footnote Continued Next Page)*

J.A. was seventeen years old when his parents, both healthcare professionals,[3] filed a petition for involuntary commitment of their son, fearing for his and their own safety. J.A.'s father reported that J.A.'s "paranoia, grandiosity, and dysregulated mood has severely escalated over the past 30 days—police had to be called three times to calm him and protect us[;] CYS and Mobile Crisis have also come to our home several times over [the] past 30 days[.]" Application for Involuntary Emergency Examination and Treatment (Section 302 Petition), 2/20/21. J.A.'s father and mother also reported that J.A. had made verbal threats toward them, that J.A. believed they were stealing his mail, and that J.A. believed his mother was trying to poison him. *Id.*

_____

1. To the extent that [J.A.] seeks review of the certification of the 302 application by respondent Bryn Mawr Hospital Clinic pursuant to 50 [P.S. §] 7302[,] the petition is DENED.

2. To the extent that [J.A.] seeks review of the certification of the 303 application by respondent Horsham Clinic pursuant to 50 [P.S. §] 7303(g), the petition is DENIED.

3. To the extent [J.A.] seeks expungement, pursuant 50 [P.S. §] 6111(g)(2), of petitioner's commitment on or about February 21, 2021, under section 302 of the [MHPA], 50 P.S. [§] 7302, the petition is DENIED.

4. To the extent [J.A.] seeks expungement, pursuant to 18 Pa.C.S.[A. §] 6111(g)(2), of [his] commitment on or about February 23, 2021, under section 303 of the [MHPA], 50 P.S. [§] 7303, the petition is DENIED.

Order, 5/12/22.

[3] J.A.'s father is a psychiatrist, and his mother is a registered nurse.

J-A01036-23

J.A. was evaluated by Tracy Bunius, M.D., a psychiatrist, who concluded that, based upon the circumstances that existed on February 20, 2021, J.A. was severely mentally disabled and in need of treatment and inpatient psychiatric admission for stabilization and safety.[4]  *See* 50 P.S. § 7301.

---

[4] Section 7301(a) provides in relevant part:

> **(a) Persons Subject**.--Whenever a person is severely mentally disabled and in need of immediate treatment, he may be made subject to involuntary emergency examination and treatment.  A person is severely mentally disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a **clear and present danger of harm to others or to himself, as defined in subsection (b)**[].
>
> **(b) Determination of Clear and Present Danger**.--(1) Clear and present danger to others shall be shown by establishing that within the past 30 days the person has inflicted or attempted to inflict serious bodily harm on another and that there is a reasonable probability that such conduct will be repeated. If, however, the person has been found incompetent to be tried or has been acquitted by reason of lack of criminal responsibility on charges arising from conduct involving infliction of or attempt to inflict substantial bodily harm on another, such 30-day limitation shall not apply so long as an application for examination and treatment is filed within 30 days after the date of such determination or verdict.  In such case, a clear and present danger to others may be shown by establishing that the conduct charged in the criminal proceeding did occur, and that there is a reasonable probability that such conduct will be repeated.  For the purpose of this section, a clear and present danger of harm to others may be demonstrated by proof that the person has made threats of harm and has committed acts in furtherance of the threat to commit harm.

50 P.S. § 7301(a), (b).

- 3 -

Pursuant to subsection 7302 of the MHPA (section 302), J.A. was involuntarily committed at Bryn Mawr Hospital. He was subsequently transferred to Horsham Clinic on February 21, 2021, where he was admitted for mental health treatment. *See id.* at § 7302.[5]

J.A. was treated at Horsham Clinic for two days. After examination and evaluation, James Yi, M.D., a board-certified psychiatrist, submitted a request that the court certify J.A. for extended section 303 involuntary treatment. *See* 50 P.S. § 7303.[6] *See also* Section 303 Application for Extended Involuntary Treatment, 2/23/22; Attending Psychiatrist Evaluation/Admission History and Examination, 2/22/21, at 6 (Doctor Yi indicating J.A. "[d]angerous to self, others, or property with need for controlled environment.").

A hearing was held before a mental health review officer (MHRO) on February 25, 2021, at which J.A.'s father, Dr. Yi, and J.A. testified. *See* 50 P.S. § 7303(b).[7] At the conclusion of the hearing, the MHRO determined that the section 303 commitment was appropriate. *See* Certification for Extended Involuntary Emergency Treatment -Section 303 , 2/25/21, at 4 ("Petitioner has produced clear and convincing evidence that patient is a clear

_____

[5] Pursuant to section 302, emergency treatment is limited to up to 120 hours (5 days). *See* 50 P.S. § 7302(d).

[6] Pursuant to section 303, emergency treatment is limited to up to 20 days. *See* 50 P.S. § 7303(h).

[7] "Within 24 hours after the [section 303] application is filed, an informal hearing shall be conducted by a judge or by a mental health review officer and, if practicable, shall be held at the facility." 50 P.S. § 7303(b).

and present danger to [him]self or others. Psychiatric testimony established that patient is severely mentally disabled, and in need of continued treatment."). Fourteen days later, on March 11, 2021, J.A. was discharged from Horsham Clinic. *See id.* at § 7303(h).

The MHPA provides for review of a section 303 commitment as follows: If the judge or MHRO certifies that an extended section 303 commitment is appropriate, the committed person may petition the court of common pleas for review of the certification. *Id.* at § 7303(g). The trial court must hold a hearing "within 72 hours after the petition is filed unless a continuance is requested by the person's counsel." *Id.* "The hearing shall include a review of the certification and such evidence as the court may receive or require." *Id.* "If the court determines that further involuntary treatment is necessary and that the procedures prescribed by the [MHPA] have been followed, it shall deny the petition. Otherwise, the person shall be discharged." *Id.*

Here, after various filings, including a December 13, 2021 "Petition for Expungement of Mental Health Records,"[8] J.A. filed, on February 16, 2022, a

---

[8] As a matter of state law, 18 Pa.C.S.A. § 6105(c)(4) prohibits an individual who has been involuntarily committed to a mental institution for inpatient care and treatment from possessing or using a firearm. Counsel for Horsham Clinic represented to the court that J.A. wants to "apply for ROTC scholarships, and based on [J.A.'s] representations, that would require that he have access to and possess firearms." N.T. Conference, Petition for Expungement of Mental Health Records, 1/6/22, at 13. Since involuntary commitment under the MHPA is an impediment to firearm license eligibility, that impediment would be lifted had the trial court invalidated the section 303 commitment, or if that commitment were ultimately invalidated on appeal. J.A. would then be able
*(Footnote Continued Next Page)*

petition for review[9] of the section 303 certification in the court of common pleas, pursuant to section 7109(b).[10]  Although J.A.'s petition was not timely

---

to challenge his section 302 commitment pursuant to 18 Pa.C.S.A. § 6111.1(g)(2) for purposes of removing that barrier to his eligibility for a firearm license.

Pursuant to 18 Pa.C.S.A. § 6111.1(g)(2), if the court, on review, determines the evidence insufficient to support **a section 302 involuntary commitment**, "the court shall order that the record of the commitment submitted to the Pennsylvania State Police [PSP] be expunged."  Notably, in *In re J.M.Y.*, 218 A.3d 404 (Pa. 2019), our Supreme Court stated that "this section, by its terms, empowers a court to entertain a petition testing the sufficiency of the evidence for a Section 302 commitment; however, **it does not authorize a court to consider whether a certification for involuntary mental health treatment pursuant to [s]ection 303 was validly entered**[.]"  *Id.* at 416, citing *In re Vencil*, 152 A.3d 235, 245 (Pa. 2017) and *In re Jacobs*, 15 A.3d 509, 511 (Pa. Super. 2011) (emphasis added).  *See also In re Vencil*, *supra* at 245 ("A sufficiency review pursuant to section 6111.1(g)(2) of the Uniform Firearms Act is merely a mechanism to expunge the PSP's record of an individual's 302 commitment to remove this barrier to his or her possession and control of firearms.").  *See J.M.Y.*, *supra* at 415-17 (concluding that neither 18 Pa.C.S.A. § 6111.1(g)(2), nor 18 Pa.C.S.A. § 6105(f)(1) of the Uniform Firearms Act provide an avenue for challenging 7 validity of section 303 commitment).

---

[9]  J.A. named Horsham Clinic as defendant.  Bryn Mawr Hospital, the County of Montgomery, Montgomery County Emergency Services, and the Pennsylvania State Police (PSP) were later joined as additional defendants.  Horsham Clinic and Montgomery County Administrator of Mental Health filed separate appellee briefs.  Pursuant to Pa.R.A.P. 2137, the PSP and Bryn Mawr Hospital adopted by reference the arguments and conclusions of those briefs.

[10] **See** 50 P.S. 7109(b) ("In all cases in which the hearing is conducted by a [MHRO], a person made subject to treatment shall have the right to petition the court of common pleas for review of the certification.").

filed within 30 days of the February 25, 2021 section 303 certification,[11] J.A. sought, and was granted, permission to file a *nunc pro tunc* petition for review. *See* Order, 2/22/22.[12]

On May 10, 2022, a review hearing[13] was held before the Honorable Bernard A. Moore.[14] At the hearing, Judge Moore heard testimony from J.A.'s father, Dr. Yi, Kelly Bonomo (a therapist at Horsham Clinic who had been involved in therapeutic sessions with J.A. and who communicated with J.A.'s parents), and J.A. Judge Moore also reviewed the following: the section 303 petition, which included the section 302 petition and notes from Dr. Yi's examination; the section 303 certification by the MHRO, which contained a summary of the evidence presented at the section 303 hearing; the audiotape of the section 303 hearing; a summary of the transcript from section 303

_____

[11] *See In re K.L.S.*, 934 A.2d 1244 (Pa. 2007) (certification constitutes final adjudication from which appeal must be taken within 30 days); *see also* 42 Pa.C.S.A. § 5571(b) ("[A]n appeal from a tribunal or other government unit to a court . . . must be commenced within 30 days after the entry of the order from which the appeal is taken[.]").

[12] *See In re J.M.Y.*, *supra* at 419 (Pennsylvania Supreme Court stating that "nothing in this Opinion should be construed as constraining [J.M.Y.'s] present ability to petition for review of the Certification, *nunc pro tunc*, based on these alleged procedural irregularities[.]").

[13] While a trial court's review of a 303 commitment does not require a full, *de novo* hearing, it does require some hearing. *In re T.J.*, 739 A.2d 478 (Pa. 1999). Because the MHRO cannot enter a final order, the review hearing before the trial court is akin to a *de novo* hearing. *Id.* at 480.

[14] J.A. represented himself at the review hearing.

hearing; the psychosocial assessment and therapeutic notes from therapist Bonomo, and the text of section 301 of the MHPA. *See* N.T. Review Hearing, 5/10/22, at 6-39; Defense Exhibits D-1 through D-5; Plaintiff's Exhibits P-1 and P-2.

Following the hearing, Judge Moore denied J.A.'s petition for review. J.A. filed this timely appeal and raises one issue for our review: "Did the learned trial judge err in upholding the 303 petition?" Appellant's Brief, at 3 (unnecessary capitalization omitted).[15]

J.A. argues that the examining physician's findings were insufficient to support certification for extended involuntary inpatient treatment under section 303 of the MHPA because he was never found to be a danger to himself and that, as far as whether he was a danger to others, his "alleged threat directed at [his parents] was ambiguous at best." Appellant's Brief, at 6, 11. J.A. contends that "despite the fact that there was no basis for a 302 [commitment,] a 303 [p]etition was filed requesting additional inpatient treatment under Section 303(b)(1) or (2) by James Yi, [M.D.,] psychiatrist." *Id.* at 11. J.A. also argues that the testimony at the review hearing "confirmed that [J.A.] was neither a danger to himself or others" as defined in the MHPA. We disagree.

_____

[15] Although the trial court's order purports to deny J.A.'s petitions to expunge the 302 and 303 commitments, the issue of expungement is of no moment unless the court determines, following a review hearing, that the section 303 involuntary commitment was invalid.

Our standard of review[16] for an involuntary commitment order under the MHPA is to "determine whether there is evidence in the record to justify the court's findings." **In re S.M.**, 176 A.3d 927, 935 (Pa. Super. 2017). "Although we must accept the trial court's findings of fact that have support in the record, we are not bound by its legal conclusions from those facts." **Id.** "The burden is on the petitioner to prove the requisite statutory grounds by clear and convincing evidence." **Id.** at 937 (citation and quotation marks omitted). "Our Supreme Court has defined clear and convincing evidence as testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." **Id.** (citations and internal quotation marks omitted). Further, the MHPA is to be strictly construed. **Commonwealth v. Moyer**, 595 A.2d 1177, 1179 (Pa. Super. 1991) (citation omitted).

Following are the specific allegations in the 302 petition, which was admitted into evidence at the section 303 review hearing:

> [J.A.'s Father:] My son's paranoia, grandiosity and dysregulated mood has severely escalated over the past thirty (30) days—police had to be called three times to calm him and protect us, CYS and Mobile Crisis have also come to our home several times over the past thirty (30) days. Today my son would not allow his mother to leave the home to retrieve our mail from the post office, he threatened my wife in my presence that she could not leave the home without him. Then he jumped on the hood of her car while she was backing out and would not get off until the police

---

[16] We note that J.A.'s appellate brief does not include this Court's scope or standard of review, as required by Pa.R.A.P. 2111(a)(3).

arrived. Mobile Crisis workers witnessed the incident firsthand. I was also present as he jumped on the car.

[J.A.'s Mother:] I tried to leave my home today to get our mail at the post office and my son insisted that I could not go without him as he is paranoid and was convinced that I would steal his mail. He physically attempted to block me from leaving the home. Then when I finally made it to my car and locked the doors, he jumped on the hood of my car as I was backing out of the garage and continued to voice threats that I could not leave. Last week when he was unhappy about something I did, he told me "I would rue the day" and "Don't worry, a surprise is coming for you." He would not allow me to make him dinner a couple of weeks ago because he thought I was going to poison him.

Application for Involuntary Emergency Examination and Treatment (Section 302), 2/20/21. **See also** Kelly Bonomo, Psychosocial Assessment, 2/22/21 (Exhibit P-2) ("Pt is a 17 y/o male admitted involuntarily due to increasing paranoia, delusional thoughts, and erratic and violent behavior. Pt attempted to disallow mother from leaving house."); N.T. Review Hearing, **supra** at 33 (Kelly Bonomo testifying in response to questioning by J.A.: "I had written in this that there was a concern about threats of violence, but not anything specific. And you had jumped on the moving car.").

J.A.'s father's testimony from the section 303 hearing was also admitted into evidence at the review hearing. **See** Summary of Transcript of Section 303 Hearing, 2/25/21[17] (J.A.'s father stating [J.A.'s] paranoia increased as did his verbal aggression toward us [.] He would stand outside our bedroom door, [and] he would get a chair and stay there all night talking to keep us awake.

---

[17] This Court has reviewed the audio recording of the section 303 hearing, which included testimony from J.A.'s father, Dr. Yi, and J.A.

. . . I called the police 3 times to our house over the past 30 days, [and] I had mobile crisis over our house twice within past 30 days[.]").

Doctor Yi's findings following his examination of J.A., set forth in the section 303 application, were also admitted into evidence at the review hearing:

> Patient is a 17 y/o boy with history of paranoia who was admitted with worsening paranoia and behaviors that are worsening for safety. He was admitted after he tried to stop his mother from driving to the post office by jumping [on]to her car. More recently, he had more bizarre behavior[,] including filling the mailbox with books, believing that M[other's] food is poison, impersonating his father to earn money, diverting his emails to different states, and also continuously suing the school district. Father also reports worsening verbal threats to the point that parents do not feel safe at night.

Application for Extended Involuntary Treatment (Section 303), 2/23/21, at 3.

On cross-examination, in response to J.A.'s question on identifying "suicidal or homicidal behavior" in the application, Dr. Yi responded:

> A: You were not admitted because of suicidal ideation. . . . [Y]ou were here for worsening paranoia and behaviors that are concerning for safety. And there are several examples here that [are] listed, **including stopping your mother from driving to the post office by jumping on to her car**[,] . . . filling the mailbox with books, believing mom's food is poison, impersonating your father to earn money, diverting his mail to [a] different state and also continuously suing the school district. **Your father was reporting worsening verbal threats to the point that your parents did not feel safe at night.**
>
> Q: **Was it your opinion that I was a clear and present danger to myself or to others when you filed this**?
>
> A: **Yes**.

- 11 -

Review Hearing, 5/10/22, at 23 (emphasis added).

J.A. argues that the threats to his mother, that she "would rue the day," and "Don't worry, a surprise is coming for you[,]" are "ambiguous at best," and, thus, cannot be construed as satisfying section 301's requirement that the individual pose "a clear and present danger of harm to others." Appellant's Brief, at 15. "Clear and present danger of harm to oneself or others is defined in the MHPA as "within the past 30 days, the person has inflicted or attempted to inflict serious bodily harm on another and that there is reasonable probability that such conduct will be repeated." 50 P.S. § 7301(b)(1). J.A. argues that the MHPA requires that a finding of clear and present danger "must be based upon an overt act[.]" Appellant's Brief, at 18.

> In **In Re B.W.**, 250 A.3d 1163 (Pa. 2021), our Supreme Court stated:
>
> From a plain reading of Section 301(b)(1), there are three alternative formulations of a clear and present danger to others: (1) the person has inflicted, or attempted to inflict, serious bodily harm on another in the past 30 days and there is a reasonable probability the person will repeat that conduct; (2) the person has been found incompetent to stand trial or acquitted due to lack of criminal responsibility of charges of inflicting, or attempting to inflict, serious bodily harm on another, and the petition establishes the charged conduct occurred and a probability it will be repeated; or (3) "**the person has made threats of harm and has committed acts in furtherance of the threat to commit harm**."

**Id.** at 1173 (quoting 50 P.S. § 7301(b)(1) (emphasis added). The Court stated that "when the involuntary commitment is based upon the third means to show a clear and present danger in Section 301(b)(1), *i.e.*, the 'threats and

acts' formulation, both a threat and an act in furtherance must be proven." *Id.* at 1774.

J.A.'s argument, however, ignores his act—jumping on the hood of his mother's car as she attempted to drive away, an act he admitted to Dr. Binius was "bizarre and dangerous behavior." *See* Section 302 Application for Involuntary Treatment, *supra* (Doctor Binius' evaluation, stating: [J.A.] admits to bizarre and dangerous behavior such as jumping on the hood of a moving car."). We decline to find J.A.'s behaviors were a mere threat without an act in furtherance. On the contrary, we find that J.A.'s behavior, his verbal threats to his parents, in particular to his mother, combined with his action of jumping on the hood of mother's car as she was attempting to drive away, demonstrates, as Dr. Yi opined, that J.A. was a clear and present danger to himself and others at the time of the 302 commitment. *See* N.T. Review Hearing, *supra* at 27 (Doctor Yi opining harm to others or to oneself does not necessarily have to be overt, stating: "[E]ven though you didn't get hurt, by jumping onto a car, there is a risk that you could [suffer] bodily injury, [and] there are other behaviors such as increasing threats to the point that your parents did not feel safe at home.").

We accord deference to Dr. Yi's testimony, "as the physician [who] examined and evaluated the individual in the first instance, was able to observe [J.A.'s] demeanor, and has particularized training, knowledge and experience regarding whether a 302 commitment is medically necessary." *In re B.W.*, 250 A.3d at 1176, quoting *Vencil*, 152 A.3d at 246. The court,

therefore, acted properly in refusing to disturb the medical determination of the examining physician.

We note that in establishing the "clear and convincing" standard of proof for involuntary treatment:

> Whether the individual is mentally ill and dangerous to [either himself or] others . . . **turns on the meaning of the facts which must be interpreted by expert psychiatrists and psychologists**. . . . The subtleties and nuances of psychiatric diagnosis render certainties beyond reach in most situations. . . . Within the medical discipline, the traditional standard . . . is a "reasonable medical certainty[.]"  [The] "beyond a reasonable doubt" standard would forc[e] reject[ion] [of] commitment for many patients desperately in need of institutionalized psychiatric care.

*Commonwealth v. Helms*, 506 A.2d 1384, 1389 (Pa. Super. 1986), quoting *Addington v. Texas*, 441 U.S. 418, 429–30 (1979) (citations omitted) (emphasis added).  As this Court stated in *Helms*:  "The legislature did not require indisputable proof that an individual's behavior would be repeated, but rather proof of the "probability" of such an event, which denotes "a chance stronger than possibility but falling short of certainty."  *Helms*, 506 A.2d at 1389, quoting Webster's New World Dictionary, College Edition (1966).  Thus, a petitioner must present evidence demonstrating a substantial likelihood that the behavior will recur if the individual is not involuntarily committed.  *Helms*, *supra*.

We believe that standard has been met here.  Viewed in its totality, the evidence clearly and convincingly demonstrates that there is a reasonable probability that J.A. would suffer serious bodily injury and/or his threats

- 14 -

against his parents would come to fruition. The trial court deemed Dr. Yi's testimony credible and sufficient to find that J.A. posed a clear and present danger to himself or others in the absence of further treatment, as contemplated by the statute. ***See*** 50 P.S. § 7301(b)(1) ("Clear and present danger to others shall be shown by establishing that within the past 30 days the person has inflicted or attempted to inflict serious bodily harm on another and that there is a reasonable probability that such conduct will be repeated."). ***See In re Vencil***, ***supra*** (trial court's review limited to findings recorded by physician and information relied upon in arriving at findings, and requires deference to physician, as original factfinder, as physician examined and evaluated individual in first instance, observed demeanor, and has particularized training, knowledge, and experience regarding whether section 302 commitment is medically necessary).

Based on our review of the record before us, we conclude that the evidence was sufficient to support Judge Moore's affirmance of the MHRO's order extending J.A.'s involuntary commitment. Accordingly, we affirm order denying J.A.'s petition for review of the order extending his involuntary psychiatric treatment.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>4/11/2023</u>