555 A.2d 793

**SOUTH WHITEHALL TOWNSHIP POLICE SERVICE, Appellant,**

v.

**SOUTH WHITEHALL TOWNSHIP and Donald MacConnell, Appellees.**

Supreme Court of Pennsylvania.

Argued Jan. 18, 1989.

Decided March 3, 1989.

Aaron M. Matte, Allentown, for appellant.

Anthony Busillo, Harrisburg, for amicus Pa. State Lodge, F.O.P.

Maria C. Mullane, Blake C. Marles, Allentown, for appellees.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

The issue presented for our consideration by this appeal is whether appellant, the collective bargaining agent for the uniformed police of South Whitehall Township, has standing to bring an action in equity which challenges a policy instituted by their police chief, requiring a particular number of public contacts per month and imposing disciplinary sanctions for noncompliance, on the basis of Act 114, which prohibits the establishment of a quota system for the issuance of traffic citations, tickets, or any other citations.[1]

---

1. Act 114 provides as follows:

 **§ 2001. Issuance of citations or tickets; illegality of quota requirements**

 No political subdivision or agency of the Commonwealth shall have the power or authority to order, mandate, require or in any other manner, directly or indirectly, suggest to any police officer, State Police Officer, game commission officer, fish commission officer or any other officer employed by such political subdivision or agency of the commonwealth that said police officer, state police officer, game commission officer, fish commission officer or any other officer shall issue a certain number of traffic citations, tickets or any other type of citation on any daily, weekly, monthly, quarterly or yearly basis.

On January 29, 1982, appellee, Donald K. MacConnell, Chief of Police of South Whitehall Township, issued a memorandum to all personnel indicating that township police officers were not issuing a suitable number of traffic citations, warnings, and parking tickets. The memorandum cautioned that any officer who fell below the average number of contacts made in the preceding month would be advised that he was below the department norm. On February 8, 1983, appellee issued a second memorandum which expressed concern about the minimal number of traffic citations and DWI arrests being made by the officers, and which established a minimum number of contacts that a police officer would be required to make. These "contacts" were described as citations, warnings, and field interrogations. Failure to meet this standard would result in progressively more serious sanctions and would culminate in a letter of termination.

Averring that several police officers received letters of reprimand in their personnel files pursuant to the policy established by these memoranda, appellant, South Whitehall Township Police Service, filed a complaint in equity, on March 27, 1984, in the Court of Common Pleas of Lehigh County, seeking a declaration that the policy constitutes a quota system in violation of Act 114, and seeking injunctive relief against appellees, South Whitehall Township and Police Chief MacConnell. Appellant later amended the complaint to include, as part of the challenged policy, a memorandum issued by Chief MacConnell on December 26, 1985. This third memorandum required 25 contacts per month and gave as examples of such contacts: 1) investigation of a citizen complaint made directly to a police officer; 2) issuance of a warning or citation; 3) apprehension/contact with or arrest of a suspect or suspicious person or vehicle; 4) engagement in the abatement of a problem; and 5) submission of a complaint initiated by the officer.

**§ 2002. Unenforceable tickets or citations**
Any tickets or citations issued in violation of this act shall be unenforceable, null and void.
1981, Oct. 30, P.L. 321, No. 114, §§ 1–2, 71 P.S. §§ 2001–2002.

Appellees challenged, among other matters, the standing of appellant to bring the action in its capacity as the collective bargaining agent of the uniformed police. The trial court granted appellees' motion for summary judgment, stating that appellant could represent "the uniformed police *only* with respect to collective bargaining," and therefore lacked standing to pursue the litigation which was brought *dehors* the bargaining agreement. Opinion of the Court at 6 (Oct. 30, 1986) (emphasis in original). The trial court also noted that this result was consistent with a Commonwealth Court determination that the recipients of traffic citations issued pursuant to a quota system could not maintain a class action for declaratory and injunctive relief on the basis of Act 114. *Woolston v. Cutting,* 103 Pa. Commw. 217, 474 A.2d 698 (1984) (Act 114 may only be asserted as a defense by individuals subject to prosecution for traffic citations issued under quota system). Appellant filed an appeal to Commonwealth Court, which affirmed 112 Pa.Commw. 223, 535 A.2d 276. We granted appellant's petition for allowance of appeal, and we now reverse.

In *Franklin Township v. Commonwealth, Department of Environmental Resources,* 500 Pa. 1, 4, 452 A.2d 718, 719 (1982), this Court stated:

The question of standing is rooted in the notion that for a party to maintain a challenge to an official order or action, he must be aggrieved in that his rights have been invaded or infringed. This principle was thoroughly considered in *Wm. Penn Parking Garage v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975) where this court confirmed that to have standing, a party must (a) have a substantial interest in the subject-matter of the litigation; (b) the interest must be direct; and (c) the interest must be immediate and not a remote consequence.

A "substantial" interest is an interest in the outcome of the litigation which surpasses the common interest of all citizens in procuring obedience to the law. *Wm. Penn Parking Garage, Inc., supra,* 464 at 192, 346 A.2d at 282. A "direct" interest requires a showing that the matter

complained of caused harm to the party's interest. *Upper Bucks County Vocational–Technical School Education Ass'n v. Upper Bucks County Vocational Technical School Joint Comm.*, 504 Pa. 418, 422, 474 A.2d 1120, 1122 (1984). An "immediate" interest involves the nature of the causal connection between the action complained of and the injury to the party challenging it, *Wm. Penn Parking Garage, Inc., supra*, 464 Pa. at 197, 346 A.2d at 283, and is shown where the interest the party seeks to protect is within the zone of interests sought to be protected by the statute or constitutional guarantee in question. *Upper Bucks County Vocational–Technical School Education Ass'n, supra*, 504 Pa. at 423, 474 A.2d at 1122.

 In the case sub judice, appellant is the collective bargaining agent of the South Whitehall Township uniformed police, and has requested relief on behalf of its members. The trial court and Commonwealth Court determined that because appellant is the sole and exclusive representative of its members for the purpose of collective bargaining, appellant is limited exclusively to representing its members in matters relating solely to collective bargaining. To the contrary, in a declaratory judgment action brought by a union to invalidate portions of the State Employees' Retirement Code, *Pennsylvania Ass'n of State Mental Hosp. Physicians, Inc. v. State Employees' Retirement Bd.*, 25 Pa.Commw. 632, 640, 361 A.2d 449, 454 (1976), the court correctly stated:

> The right of a bargaining representative to sue on behalf of its members' interests is clear. *Newspaper Guild of Greater Philadelphia v. Philadelphia Daily News, Inc.*, 401 Pa. 337, 164 A.2d 215 (1960). [A] union plaintiff … meets the requirements of standing recently set forth in *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975), [if] *its members* have a direct and substantial interest in the litigation and the result thereof will have an immediate impact on the parties.

(emphasis added). Accordingly, appellant has the right to bring this action on behalf of its members' interests and has standing to do so if its members have an interest in the litigation that is substantial, direct, and immediate.

When the South Whitehall Township uniformed police do not make the public contacts specified at the monthly rate required, they are exposed to sanctions which can lead to the loss of employment. The outcome of the litigation will have an impact upon the conditions of the uniformed officers' employment, thus their interest surpasses the common interest of all citizens. In addition, violation of the policy is averred to have caused the discipline of several officers. It is clear, therefore, that appellant's members have a substantial and direct interest in the public contact policy that is challenged herein. What remains to be determined is whether appellant's members have an immediate interest in the litigation.

The remarks of the legislators debating passage of Act 114 demonstrate that the legislature intended to protect police officers by prohibiting the imposition of quotas for the issuance of tickets and citations. Supporting enactment of Act 114, Representative Deal stated:

> For 25 years I served in the Philadelphia Police Department. For 1 year I served as director of public safety in the city of Fayette, Mississippi. I am aware that there are supervisors in police departments who do put undue pressure on police officers to get quotas. They do it in many ways. So often when the police officer does not write enough tickets, he is moved from an area where he may have been working over a period of time, or he may be changed to different shifts. In some areas funds from tickets are used to help support the economy of some subdivisions.

> I think in all fairness to police officers so that other persons who are included in this bill may do their job and do it well, we ought to support this bill.

Legislative Journal, House of Representatives, Oct. 14, 1981, at 1737. Opposing enactment of Act 114, Representative Hoeffel stated:

The reason I stand in opposition to it, essentially, is because of the views expressed to me by the administration in my local police department. They are afraid that this bill goes way too far in dealing with what may or may not be a problem in this Commonwealth, which would be traffic ticket quotas. They are afraid that the language of this bill—and I have to agree with them— would prohibit the supervisors and administrators of police departments from ever saying to a police officer, ever calling him forward before them and saying, why have you not given a ticket in the last month? I do not think the bill intends to do that. The bill speaks to what is perceived to be a problem which people have complained about in this Commonwealth for years, about local police departments have quotas to meet and officers giving unwarranted tickets as a result to meet their quotas. Certainly nobody can be in favor of that. But the language of the bill, if you look at it, seems to go an awful lot further than that. It talks about no political subdivision being permitted in any manner, directly or indirectly, from suggesting to any police officer that he issue a certain number of traffic citations during a certain period. And I do think that that would prevent a police chief or police captain from asking one of his patrolmen why that individual had not issued any traffic citations, for example, in the past quarter when all of the individual's coworkers might have given out 10 or 15 or 20 traffic tickets during that same period.

I think the bill goes too far. I think it is an overreaction to what may or may not be a problem in the State.

*Id.* at 1735–36.

The interest of appellant's members that is sought to be protected herein was clearly intended by the legislature to be within the zone of interests to be protected by Act 114. Thus, the uniformed police of South Whitehall Township

also have an immediate interest in the litigation, and their collective bargaining agent has standing to bring the action as an aggrieved party.

The language of Act 114 does not preclude a party from bringing a civil action to challenge a policy that violates its terms, nor has this Court yet considered this issue. If we assume that Commonwealth Court correctly decided the issue in *Woolston, supra,* and if we assume likewise that appellant could not bring a civil action to challenge the policy instituted by appellees, then *no one* could proscribe the illegal acts of a municipality under these circumstances. To prohibit citizens from seeking to enjoin the illegal acts of public officials would be the antithesis of democracy.

Accordingly, we reverse the order of Commonwealth Court, and we remand the case to the Court of Common Pleas of Lehigh County for further proceedings consistent with this opinion.[2]

NIX, C.J., and McDERMOTT and STOUT, JJ., concur in the result.

2. The Motion to File Amicus Brief Nunc Pro Tunc filed after oral argument in the case by the Pennsylvania Chiefs of Police Association is hereby denied.