J-S34016-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                  :             PENNSYLVANIA
                                  :
         v.                            :
                                  :
                                  :
MATTHEW SCOTT GARDOPEE        :
                                  :
         Appellant          :   No. 186 WDA 2022

Appeal from the Judgment of Sentence Entered January 12, 2022
In the Court of Common Pleas of Cambria County
Criminal Division at CP-11-CR-0001141-2020

BEFORE:   DUBOW, J., MURRAY, J., and PELLEGRINI, J.*

MEMORANDUM BY MURRAY, J.:           **FILED: OCTOBER 28, 2022**

Matthew Scott Gardopee (Appellant) appeals from the judgment of sentence entered after a jury convicted him of three counts of recklessly endangering another person (REAP); two counts each of aggravated assault and simple assault; and one count of terroristic threats.[1] We affirm.

The trial court summarized the underlying facts as follows:

> Testimony at trial established that on July 2, 2020, [Appellant] was involved with a verbal altercation with his girlfriend, Anna Halapia (Anna) inside their residence at 114 Cedar Street.[FN1] The incident escalated with [Appellant] threatening Anna and her daughter, Adreanna, saying someone needed to die. [Appellant] left the residence followed by Anna[,] who saw him walk around the residence headed to the backyard which was shared with her brother, Robert [Sechrengost (Robert)]. At the time[,] Matthew [Sandoval (Matthew)] was in

---

* Retired Senior Judge assigned to the Superior Court.

[1] ***See*** 18 Pa.C.S.A. §§ 2705, 2702, 2701, and 2706, respectively.

the backyard with [his and Halee Sechrengost's (Halee) two-year old daughter] playing in a kiddie pool. Anna reentered her residence, proceeded to th[e] back door to look out, and told Adreanna to call 911 because she was afraid [Appellant] would hurt someone. Adreanna call[ed] 911 to report that [Appellant] [was] making threats. While Adreanna [was] on the phone, Anna [told her] to tell 911 that [Appellant] had a knife[,] and she relay[ed] this information to the operator.[FN2]

---

[FN1] Anna's residence is a duplex with her brother Robert residing in the other half.

[FN2] A recording of the 911 call was played for the jury.

---

As he walked around the residence, [Appellant] encountered Halee[, (who is Robert's daughter and Anna's niece),] who was in her neighboring yard. [Appellant] grabbed Halee and threatened her with a knife he took from his belt[,] but she was able to get away from him and go to her residence where she retrieved her shotgun. Matthew saw the encounter between his girlfriend, Halee, and [Appellant] and took his daughter from the pool and placed her inside Robert's back door. While inside[,] Matthew call[ed] for Robert to come downstairs because [Appellant had] just threatened Halee with a knife.

While Matthew was putting his daughter inside Robert's backdoor, [Appellant] crossed the yard and walked towards him. Robert came downstairs and entered the backyard through a side door where he confronted [Appellant,] asking him why he was threatening Halee. [Appellant] turned away from Mathew towards Robert and began approaching him with his knife in hand. Robert backed away from [Appellant] and became entangled or tripped up by a camping chair in the backyard, at which time [Appellant] lunged at him with the knife. Matthew pushed Robert aside and began struggling with [Appellant] over control of the knife.

During the struggle, Matthew was able to take the knife away from [Appellant,] while [Appellant] put Matthew in a headlock and began punching his head and back. In an effort to get [Appellant] to release him, Matthew use[d] [Appellant's] knife and stab[bed] him repeatedly to no avail[,] as [Appellant would] not release him or stop the attack. At this point Halee arrived in

the backyard carrying a shotgun and saw Matthew struggling with [Appellant]. Halee approached the pair and saw blood on the two men but could not tell who was injured. She struck [Appellant] on the head with the butt of the weapon in an effort to end the fight. [Appellant] continued to fight and Halee pointed the shotgun at him and told him to stop or she would shoot, at which time [Appellant] stopped struggling and collapsed on the ground.

… Johnstown Police Department (JPD) Patrolman Alex Conahan ([Officer] Conahan) arrived on the scene to find [Appellant] on the ground with Matthew administering aid. Conahan observed the knife on the ground some distance away from the pair[,] testifying that it had a multicolored handle and had blood on it. Multiple other officers arrived on scene as did EMS personnel who took over providing attention to [Appellant] and eventually transported him to Conemaugh Memorial Medical Center, where he underwent surgery for his injuries.

Trial Court Opinion, 5/9/22, at 5-7 (footnotes in original). At the scene, JPD Patrolman Robert Hanik (Officer Hanik) recovered a multi-colored knife with skulls and crosses on it.

On November 16, 2021, a jury convicted Appellant of the aforementioned charges.[2] The Commonwealth filed notice of its intention to seek the mandatory minimum sentence[3] for Appellant's conviction of aggravated assault – attempt to cause serious bodily injury (Matthew), based on Appellant's 2009 conviction of arson of an inhabited building or structure. On January 12, 2022, following the preparation of a pre-sentence investigation

---

[2] The jury acquitted Appellant of four counts of aggravated assault and one count each of terroristic threats and simple assault.

[3] *See* 42 Pa.C.S.A. § 9714.

report (PSI), the trial court sentenced Appellant to an aggregate prison term of 11.3 to 25 years. Appellant filed a post-sentence motion, which the trial court denied. Appellant timely appealed. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for review:

1. Whether the [] court erred when it denied [Appellant's] Motion for a New Trial since the jury's verdict was against the sufficiency of the evidence? Particularly, [Appellant] claims that the knife admitted into evidence during the trial was tampered with.

2. Whether [Appellant] was denied a fair trial due to testimony of multiple witnesses that [Appellant] claims was so patently unreliable that a guilty verdict based thereon was pure conjecture?

3. Whether a substantive variance between the criminal information, the jury instructions, and the verdict slips on Counts 5, 10, and 11, as to the elements of the crimes charged constituted reversible error?

4. Whether the court abused the discretionary aspects of sentencing in that [Appellant's] sentence was unduly harsh and by failing to take into adequate consideration mitigating factors including [Appellant's] life-threatening injuries caused by the Victims?

5. Whether [Appellant] was denied a fair trial by the failure of the Commonwealth to arrest and charge three witness-victims in this case (Matthew Sandoval, Robert Sechrengost, and Halee Sechrengost) with assault against [Appellant], who suffered life-threatening wounds?

Appellant's Brief at 3 (issues renumbered for disposition, some capitalization omitted).

Appellant first challenges the sufficiency of the evidence.[4]  Appellant's Brief at 19.  In particular, Appellant claims the knife shown to the jury at trial as Exhibit 11 was tampered with while in police possession.  He argues

> the knife used by Matthew [] to inflict life-threatening wounds on him was tampered with between July 2, 2020, and the date it was introduced into evidence at trial on November 15, 2021. [Appellant] claims the jury should have recognized that the identity and condition of the exhibit did not remain unimpaired until it was surrendered to the trial court.

*Id.* at 20.  Appellant directs our attention to the testimony of JPD Detectives Mark Britton (Detective Britton) and Brad Christ (Detective Christ).  Both detectives testified that the knife presented at trial had dried blood and "some hair" on it.  *See id.* at 21 (citing N.T., 11/15/21, at 84 (Detective Britton describing the knife as having blood and hair on it), 101 (Detective Christ stating the knife "looks like it had dried blood on it.")).  In contrast, Appellant asserts that Commonwealth's Exhibit 16, a photograph of the knife taken by Detective Christ in October 2021, depicted a clean and shiny knife.  *Id.* at 22.  Appellant relies on the following in-chambers exchange between the Commonwealth and his defense counsel:

> [Defense Counsel]:  … [Y]ou sent over a picture of the knife all clean and shiny.

---

[4] Although Appellant seeks a new trial, the appropriate remedy for a successful sufficiency challenge is a judgment of acquittal.  *See Commonwealth v. Widmer*, 744 A.2d 745, 751-752 (Pa. 2000) (explaining differences between challenge to weight of evidence versus the sufficiency of evidence; the remedy for a successful challenge to the sufficiency of evidence is a judgment of acquittal; the remedy for a successful challenge to the weight of evidence is a new trial).

[The Prosecutor]:  I did.

[Defense Counsel]:  Does it still have blood on it?

[The Prosecutor]:  I don't know.  I didn't really notice if it did or not.

*Id.* (quoting N.T., 11/15/21, at 10-11).  Appellant claims the photo of a "clean and shiny" knife rendered the detectives' testimony insufficient as a matter of law.  *Id.* at 22.

When reviewing a challenge to the sufficiency of the evidence, we determine "whether the evidence proved at trial established the appellant's guilt of each element of the offenses charged beyond a reasonable doubt[.]"  *Commonwealth v. Smith*, 234 A.3d 576, 581 (Pa. 2020) (citations omitted).  "Evidentiary sufficiency is a question of law and, therefore, our standard of review is *de novo* and our scope of review is plenary."  *Commonwealth v. Sanchez*, 36 A.3d 24, 37 (Pa. 2011).  "When performing a sufficiency review, we consider whether the evidence introduced at trial and all reasonable inferences derived therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish the elements of the offense beyond a reasonable doubt."  *Smith*, 234 A.3d at 581.

This Court has explained:

The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.  Moreover, in applying the above test, the entire record must be evaluated and all evidence actually

received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Fabian*, 60 A.3d 146, 151 (Pa. Super. 2013) (citation omitted). "Issues of witness credibility include questions of inconsistent testimony and improper motive." *Sanchez*, 36 A.3d at 27.

As observed by the trial court, Appellant's Pa.R.A.P. 1925(b) concise statement failed "to specify which element or elements of which offense the Commonwealth's evidence was purportedly insufficient on." Trial Court Opinion, 5/9/22, at 11. "In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." *Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013) (citation omitted). "Where a 1925(b) statement "does not specify the allegedly unproven elements … the sufficiency issue is waived [on appeal]." *Commonwealth v. Williams*, 959 A.2d 1252, 1257 (Pa. Super. 2008).

Appellant further fails to identify in his appellate brief which elements of which offenses he challenges. Thus, Appellant waived his sufficiency challenge. *See id.* Nonetheless, absent waiver, we would conclude Appellant's claim lacks merit for the reasons stated in the trial court's opinion. *See* Trial Court Opinion, 5/9/22, at 11-12 (emphasizing evidence of the knife's chain-of-custody and Anna's testimony that the knife presented at trial was

- 7 -

the knife used during the assault). Accordingly, Appellant's first claim lacks merit.

In his second issue, Appellant challenges the verdict as being against the weight of the evidence. Appellant's Brief at 22. Appellant argues he was denied a fair trial "due to testimony of multiple witnesses" that was "so patently unreliable that a guilty verdict based thereon was pure conjecture." *Id.* Appellant points to the inconsistent testimony of JPD Officer Ryan Chiodo (Officer Chiodo) and Officer Conahan. According to Appellant, Officer Chiodo's incident report described his observation of Officer Conahan with his taser drawn, instructing Appellant to roll onto his stomach. *Id.* at 23 (citing N.T., 11/15/21, at 46). However, at trial, Officer Conahan testified he did not recall ever pulling out his taser. *Id.*

Appellant further asserts Detective Christ falsely testified he "was turned away from speaking to [Appellant] at the hospital due to Covid-19, when Anna [] testified she voluntarily visited [Appellant] during Covid." *Id.* at 23. Appellant argues:

> As such, Covid would not have been a barrier … to Detective Christ's visit during the investigation, during which [Appellant] could have chosen to give a statement close in time to the incident. Everyone else involved was given the opportunity to provide written or verbal statements to police.

*Id.* at 24. Finally, Appellant claims Anna's daughter provided inconsistent testimony about whether she saw Appellant with a knife. *Id.* Appellant claims, "singly and in tandem, the patent unreliability of the aforementioned

evidence" and other inconsistencies rendered the jury's guilty verdict "pure conjecture." ***Id.*** at 25.

"A weight of the evidence claim concedes that the evidence is sufficient to sustain the verdict but seeks a new trial on the grounds that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice." ***In re A.G.C.***, 142 A.3d 102, 109 (Pa. Super. 2016) (citation omitted). "Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." ***Commonwealth. v. Widmer***, 744 A.2d 745, 753 (Pa. 2000) (citation omitted). "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination of whether the verdict is against the weight of the evidence." ***Id.*** (citation omitted).

The trial court extensively addressed this claim, citing relevant law and concluding the claim was meritless. ***See*** Trial Court Opinion, 5/9/22, at 12-18. The trial court's determination is supported by the evidence, and we discern no abuse of discretion or error. ***See id.*** Accordingly, we adopt the trial court's analysis with regard to Appellant's second issue. ***See id.***

In his third issue, Appellant claims a substantive variance exists between the criminal information and jury instructions, and the verdict slips on Counts 5, 10 and 11, "as to the elements charged, constitut[ing] reversible

error." Appellant's Brief at 13. According to Appellant, "[t]he written verdict slips incorrectly included the higher element of <u>serious bodily injury</u> for [the certain charges of simple assault and aggravated assault,] rather than the correct element of <u>bodily injury</u>." *Id.* at 14 (emphasis added). For aggravated assault, Appellant asserts, he was charged with attempting to cause "<u>bodily injury</u> with a deadly weapon." *Id.* (emphasis added). However, the jury convicted Appellant of attempting to cause "serious bodily injury" based on the error in the verdict slip. *Id.* Similarly, although the Commonwealth charged Appellant with simple assault – attempt to cause <u>bodily injury</u>, the verdict slip asked the jury to find "serious bodily injury." *Id.* (emphasis added). Appellant claims these errors made the jury's job more difficult, and the error was not harmless.[5] *Id.* at 16. We disagree.

The trial court applied the applicable law and concluded Appellant's claim lacked merit. *See* Trial Court Opinion, 5/9/22, at 8-10. We agree with the rationale and conclusion of the trial court, as set forth in its opinion, and adopt the court's analysis. *See id.* In addition, our review discloses that Appellant did not object to the error on the jury slip prior to the verdict, or before the trial court discharged the jury. The following discussion occurred after the trial court discharged the jury:

---

[5] Appellant concedes that sentences for "the [c]ounts upon which erroneous verdict slips were presented to the jury were run concurrently to Count 1 [(aggravated assault)] during the sentencing hearing[.]" *Id.* at 16.

[Defense Counsel]: If I may, Your Honor, I was just a little confused as to Counts 9, 10 and 11 when the foreperson read those simple assault verdicts. She referred to serious bodily injury.

THE COURT: I noticed that. Well, 9 was not guilty.

[Defense Counsel]: Well, okay.

THE COURT: But 10 and 11 and 5.

[Defense Counsel]: My question is on the official verdict slips they didn't write in serious bodily injury or anything of that nature.

THE COURT: They did not, but they checked the block, so I'm going to say that the verdict slip is probably wrong. But I'll handle that at sentencing.

[Defense Counsel]: **Okay. Good**.

N.T., 11/16/21, at 117-18 (emphasis added). Appellant did not object or seek a new trial. "The failure to object to an improper verdict slip before deliberations [] waives any complaint relating thereto." ***Commonwealth v. Dorm***, 971 A.2d 1284, 1288 (Pa. Super. 2009) (citation omitted).

Our review also confirms that the trial court properly instructed the jury regarding the elements of each charge, including the definitions of "bodily injury" and "serious bodily injury." In the jury charges for aggravated assault – attempt to cause "serious bodily injury," the trial court defined "serious bodily injury" for the jury:

> Serious bodily injury is bodily injury that creates a substantial risk of death or that causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily organ.

- 11 -

N.T., 11/16/21, at 89. The court instructed the jury repeatedly on this definition of "serious bodily injury." *See id.* at 89, 90-91. As to Counts 4, 5 and 6, aggravated assault – attempt to cause bodily injury with a deadly weapon, the trial court defined "bodily injury" for the jury:

> Bodily injury means impairment of physical condition or substantial pain. In order to find the defendant attempted to do this, you must find that he engaged in conduct that constituted a substantial step toward causing bodily injury.

*Id.* at 93. The court again defined "bodily injury" regarding the charges of simple assault – bodily injury attempted and/or caused: "Bodily injury means impairment of physical condition or substantial pain." *Id.* at 99.

During deliberations, and at the request of the jury, the trial court re-issued the same instructions regarding the difference between the level of harm attempted and/or caused as to Counts 1-3 and 4-6. N.T., 11/16/21, at 105-13. Regardless of the errors on the verdict slip, "[t]he law presumes that the jury will follow the instructions of the court." *Commonwealth v. Purnell*, 259 A.3d 974, 986 (Pa. 2021).

Finally, we conclude that any error regarding the verdict slip is harmless. An error is harmless "only if the appellate court is convinced beyond a reasonable doubt that the error is harmless." *Commonwealth v. Jones*, 240 A.3d 881, 891 (Pa. 2020).

> Harmless error exists if the state proves either: (1) the error did not prejudice the defendant or the prejudice was de minimis; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or

> (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Id.* at 892 (citations omitted).

Here, the error on the verdict slip required the jury to find a higher level of harm than statutorily required. To find serious bodily injury, the jury was required to find that the Commonwealth established the lesser harm of bodily injury. Considering the trial court's correct jury instructions and the nature of the verdict slip error, we conclude the error did not contribute to the verdicts beyond a reasonable doubt. Appellant's third issue does not merit relief.

In his fourth issue, Appellant challenges the discretionary aspects of his sentence, from which there is no absolute right to appeal. ***Commonwealth v. Solomon***, 247 A.3d 1163, 1167 (Pa. Super. 2021) (*en banc*). Rather, where the appellant has preserved the challenge by raising it in a post-sentence motion and timely appealing, he must (1) include in his brief a statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f); and (2) show there is a substantial question that the sentence is not appropriate under the Sentencing Code. ***Id.***; ***see also*** 42 Pa.C.S.A. § 9781(b).

Appellant's brief includes a Rule 2119(f) statement. Appellant's Brief at 17-18. Therefore, we examine whether the statement presents a substantial question. ***See Commonwealth v. Brown***, 249 A.3d 1206, 1211 (Pa. Super. 2021) ("We examine an appellant's Rule 2119(f) statement to determine

whether a substantial question exists." (citation omitted)). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Caldwell*, 117 A.3d 763, 768 (Pa. Super. 2015) (*en banc*) (citation omitted).

Appellant asserts his sentence "was overly harsh, notwithstanding the court's lack of authority to impose a sentence with a less than 10-year mandatory [minimum sentence] on Count 3 …." Appellant's Brief (Rule 2119(f) Statement) at 17. Appellant challenges as excessive the imposition of a consecutive sentence at Count 8 (terroristic threats), at the highest standard guidelines range. *Id.* Appellant also claims the trial court failed to consider mitigating evidence of the injuries he sustained. *Id.* at 17-18. Appellant also claims the trial court failed to consider his rehabilitative needs resulting from the injuries. *Id.* at 18.

This Court has recognized that a challenge to the imposition of consecutive rather than concurrent sentences generally does not present a substantial question. *Commonwealth v. Lloyd*, 878 A.2d 867, 873 (Pa. Super. 2005). In addition, "where the sentencing judge had the benefit of a presentence investigation report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors."

*Commonwealth v. Conklin*, 275 A.3d 1087, 1098 (Pa. Super. 2022) (citation omitted).

Crucially, Appellant's 2119(f) statement fails to either identify the manner in which the sentence violates a specific provision of the sentencing scheme or the particular fundamental norms of the sentencing process. *See Commonwealth v. Bromley*, 862 A.2d 598, 604 (Pa. Super. 2004) ("In order to raise a substantial claim, Appellant's 2119(f) statement must sufficiently articulate 'the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process.'" (citation omitted)). Therefore, Appellant has failed to raise a substantial question that his sentence was manifestly excessive.[6]

Finally, Appellant argues he was denied a fair trial because the Commonwealth failed to arrest and charge Matthew, Halee, or Robert. Appellant's Brief at 25. Appellant's counsel acknowledges that a "private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." Appellant's Brief at 25 n.5. Appellant's counsel is correct. *See Linda R.S. v. Richard D. and Texas*, 410 U.S. 614, 619 (1973) (stating "in American jurisprudence at least, a private citizen lacks a

---

[6] Even if Appellant had raised a substantial question, he would not be entitled to relief. *See* Trial Court Opinion, 5/9/22, at 19-23.

judicially cognizable interest in the prosecution or nonprosecution of another"). This Court has recognized that "only the Commonwealth … has a legally cognizable interest in convicting criminals." ***In re Hickson***, 765 A.2d 372, 385 (Pa. Super. 2000). Thus, Appellant's final issue is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/28/2022